Grimes *v.* Grimes et al., Appellants.

Argued November 14, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ,

*Frank D. DiCenzo,* for appellants.

*W. H. Markus* and *R. C. Riethmuller,* for appellees.

OPINION BY HOFFMAN, J., March 19, 1970:

Appellees (hereinafter "judgment creditors") confessed judgment on a note against appellants (hereinafter "judgment debtors") in the amount of $12,190.00. This amount, we must assume, consisted of the principal appearing on the face of the note (less credits), interest unpaid as of the date of confession, and attorney's commission. Although the note did not contain an acceleration clause, we must assume on this appeal that the note permitted entry of judgment in this amount since an attack on the judgment was never made. See, e.g., *Pacific Lumber Co. v. Rodd,* 287 Pa. 454, 135 A. 122 (1926); *Harwood v. Bruhn,* 313 Pa. 337, 170 A. 144 (1934); *Rose v. Cohen,* 193 Pa. Superior Ct. 454, 165 A. 2d 264 (1960).

The judgment creditors then filed a praecipe for writ of execution in the amount of $5,520.00, consisting of principal and interest in default as of the date of filing, and attorney's commission. See, e.g., *Shapiro v. Malarkey,* 278 Pa. 78, 122 A. 341 (1923); *Rose v. Cohen,* supra. Execution was then issued in said amount upon real estate belonging to the judgment

debtors. A sale was held, at which the judgment creditors purchased the real estate for taxes and costs.

The judgment creditors then brought a petition to fix the fair market value of the property under the Deficiency Judgment Act, Act of July 16, 1941, P. L. 400, 12 P.S. §2621.[1] A hearing was held, at which evidence as to market value was taken. The court below fixed the value of the real estate at $11,000.00.

The court further concluded that the debt was $13,-723.74, consisting of the judgment, interest accumulated between entry of judgment and execution sale,[2] taxes and costs. The court then declared that a deficiency of $2,723.74 remained. From that order, fixing the fair market value of the real estate and declaring a deficiency, this appeal followed.[3]

Section 6 of the Deficiency Judgment Act provides, in pertinent part, as follows:

". . . If an answer [controverting the fair market value stated in the judgment creditor's petition] shall be filed and testimony produced setting forth that the fair market value of the property is more than the value stated in the [judgment creditor's] petition, *the court shall determine and fix the fair market value of the property which shall in no event exceed the amount of the debt, interest, costs, taxes and municipal claims.*

---

[1] "Whenever any real property has heretofore been or is hereafter sold, directly or indirectly, to the plaintiff in execution proceedings and the price for which such property has been sold was or is not sufficient to satisfy the amount of the judgment, interest and costs, the plaintiff or plaintiffs shall petition the court having jurisdiction to fix the fair market value of the real property sold as aforesaid. . . ." Section 1; 12 P.S. §2621.1.

[2] We must assume on this appeal that the court's determination of interest was correct, no attack having been made thereon.

[3] The opinion of the court below did not detail the factors underlying its determination of the $11,000 fair market value. The testimony taken at the hearing, however, amply supports the finding.

After the hearing and the determination by the court of the fair market value of the property sold the debtor . . . and any other person liable directly or indirectly to the [judgment creditor] for the payment of the debt shall be released and discharged of such liability to the [judgment creditor] to the extent of the fair market value as . . . determined by the court, less the amount of all prior liens, costs, taxes and municipal claims not discharged by the sale . . ., and thereupon [the judgment creditor] may proceed by appropriate proceedings to collect the balance of the debt." 12 P.S. §2621.6. [Emphasis added.].[4]

Section 6 thus requires that the court below fix the fair market value of judgment debtor's property below or at the amount of the "debt". The court cannot fix the value higher. The judgment debtor is discharged of his obligation to the judgment creditor only in the amount of value so fixed. Thus the question presented to the court below and to this Court is: What is the "debt" of which the judgment debtors can be fully or partly discharged? Is it the amount in default as of the date of judgment creditors filed their praecipe for writ of execution, or is it the amount of the judgment confessed on the note?[5]

The Deficiency Judgment Act was enacted to remedy a practice prevalent during the Great Depression. "That Act was passed during the depression to deal with the inequity that an execution creditor could pur-

---

[4] The court below added the taxes and costs to what it considered the debt rather than subtracting the taxes and costs from its determination of fair market value. The result is the same by either method, of course.

[5] The judgment debtors, who are appellants here, apparently believe that if the amount in default is the "debt" and if the fair market value is fixed in that amount, then their obligation to the judgment creditors for the principal not yet in default will be discharged. This apparent belief is in error.

chase real estate for a nominal amount at a forced sale and still retain the full amount of his judgment against the debtor. The solution to this problem was to reduce the judgment by the fair market value of the property instead of the actual sale price." *Philip Green & Son, Inc. v. Kimwyd, Inc.,* 410 Pa. 202, 205, 189 A. 2d 231 (1963). See *Hoffman Lumber Co. v. Mitchell,* 170 Pa. Superior Ct. 326, 329, 85 A. 2d 664 (1952). The judgment creditor is required to petition the court to fix fair market value within six months after the sale of the judgment debtor's real estate. Section 7, 12 P.S. §2621.7. "If the [judgment creditors] shall fail to present such petition to fix the fair market value of the real property sold within six months after the sale of such real property as provided by this act, the debtor . . . or any other person liable directly or indirectly to the [judgment creditors] for the payment of the debt . . . may present his or their petition to the court having jurisdiction, setting forth the fact of said sale, and that no petition has been filed within six months after said sale to fix the fair market value of the property sold, whereupon the court, . . . [after] being satisfied of such facts, shall direct the prothonotary to mark said judgment satisfied, released and discharged." Section 7.1, added by the Act of May 27, 1943, P. L. 681, 12 P.S. §2621.7a.[6]

Given the above, it would be contrary to the purposes of the Act to declare the "debt" as the amount in default as of the date of execution rather than the amount in which judgment was confessed in this case. To do so would permit judgment creditors to have execution issued upon each default in payment on an installment note underlying a judgment, buy their judgment debtors' real estate at each subsequent execution

---

[6] Waiver of the benefits of the Act are "void, unenforceable and of no effect." Section 10, 12 P.S. §2621.10.

sale, and fix the fair market value of each piece of real estate in an amount no higher than the amount of the installment in default. This would permit a return to the situation the legislature sought to eliminate. For this Court to permit that would be unconscionable.

Order affirmed.