Delaware Valley Factors, Inc. v. G. B. Echenhofer Co., Inc. et al., Appellants.

Argued September 19, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

*Jacob S. Richman,* with him *Richman & Richman,* for appellants.

*Charles M. Golden,* with him *Sidkoff, Pincus, Greenberg & Golden,* for appellee.

OPINION BY SPAETH, J., December 11, 1973:

This is an appeal from an order dismissing appellants' exceptions to an order fixing the fair market value of their property pursuant to the Deficiency Judgment Act, Act of July 16, 1941, P. L. 400, 12 P.S. §2621.1 *et seq.* Appellants raise two issues: whether the proceedings should be held void because of improper service of process; and whether the Act's six month period of limitations had lapsed. We hold against appellants on both of these issues and affirm the order of the court below.

In 1969, corporate appellant executed a bond and warrant secured by a mortgage on its meat processing plant in Philadelphia. At the same time, its officers, the individual appellants, executed written guarantees of the indebtedness.

On June 3, 1970, appellee confessed judgment for $81,893.84 on the corporate bond and warrant and is-

sued execution. Pursuant to this the property was sold at a sheriff's sale on September 14, 1970, and was purchased by appellee for $5,700. On June 19, 1971, appellee delivered to the sheriff the balance of the purchase money, and on June 29 the sheriff delivered a Deed-Poll. On August 13, appellee filed a petition to fix fair value under the Deficiency Judgment Act. The court set September 20 as the date for hearing on the petition and directed appellee to serve appellant in accordance with section 4 of the Act, 12 P.S. §2621.4. This section requires either personal service, service on an immediate member of the family at the residence, or by publication in the county where the petition is filed.

On the corporate appellant the sheriff returned "not found within the County of Philadelphia." Instead of serving notice by publication in Philadelphia, he attempted to serve the individual appellants, who live in Burlington County, New Jersey, by publication in Camden County, New Jersey, newspapers.

At the rescheduled hearing on September 30 before the Honorable Ned L. Hirsh, only appellee appeared; the court requested counsel to prepare a decree. On the morning of the same day, but too late for the hearing, counsel for appellants noted the listing of the hearing in the Legal Intelligencer. He went to Judge Hirsh's chambers, and was granted leave to file an answer to the petition to fix fair value, which he did on October 15. In the answer appellants alleged that the eleven months between the sale (in September, 1970) and the petition (in August, 1971) represented undue delay.

On February 14, 1972, appellants filed a petition to strike the petition to fix fair value and to mark the judgment satisfied. This petition reiterated the allegation of undue delay but further pointed out the defective publication (in Camden County instead of Philadelphia), pleading that because of this the deficiency judgment action should be stricken and appellants de-

clared subject to no further liability. On February 17 appellee filed an answer to the petition to strike.

A full hearing was held on June 21, 1972, before Judge HIRSH, at which time the petition to strike was dismissed and the fair value of the property was set at $55,000.00, thus making appellants liable under the Act for $26,893.84 (the difference between the judgment for $81,893.84 and the adjudicated fair value of $55,000).

On the petition to strike, the court below held that appellants by appearing waived objection to the improper publication. Appellants contend they did not, citing Section 10 of the Act: "It shall be incompetent for any debtor, obligor or guarantor at any time, either before or after or at the time of incurring any obligation, to waive the benefits of this act or to release any obligee from compliance with the provision thereof. Any such waiver or release shall be absolutely void, unenforceable and of no effect." Act of July 16, 1941, P. L. 400, §10, 12 P.S. §2621.10.

The purpose of this section is clear. The Deficiency Judgment Act was enacted to establish the sole procedure by which a creditor may retain judgment for an amount above the value of property purchased on execution. Before the Act, the debtor would remain liable for all but the amount actually realized at the sale. *Ochiuto v. Prudential Ins. Co. of America*, 356 Pa. 382, 384, 52 A. 2d 228, 230 (1947). "That Act was passed during the depression to deal with the inequity that an execution creditor could purchase real estate for a nominal amount at a forced sale and still retain the full amount of his judgment against the debtor. The solution to this problem was to reduce the judgment by the fair market value of the property instead of the actual sale price." *Philip Green & Son, Inc. v. Kimwyd, Inc.*, 410 Pa. 202, 205, 189 A. 2d 231, 232-233 (1963). Thus this court has recognized that the Act is to be liberally interpreted in aid of judgment debtors. *See, e.g., West-*

*ern Flour Co. v. Alosi,* 216 Pa. Superior Ct. 341, 264 A. 2d 413 (1970) ; *Grimes v. Grimes,* 216 Pa. Superior Ct. 150, 264 A. 2d 410 (1970).

To allow waiver of the benefits of the Act by a debtor would quickly lead to abuse. The notice provision (Section 4) as well as the requirement that no hearing be held unless service is properly made (Section 5, 12 P.S. §2621.5) are "benefits" under the Act and therefore, as appellants contend, cannot be waived. However, the "benefits" to which these sections entitle a debtor are adequate notice and consequently adequate time to prepare for the hearing at which the valuation is to be made.

In this case the valuation hearing was on June 21, 1972, nine months after appellants' attorney first noticed the listing in the Legal Intelligencer and four months after he first petitioned the court to dismiss appellee's petition for defective publication. Thus, in fact appellants had nine months notice and time to prepare for the valuation hearing. Had publication been made as required they might have received only 15 days constructive notice (the minimum called for by Section 4), notice being buried in the back columns of a Philadelphia newspaper instead of one in Camden.*

We do not hold that appellants have waived notice. They received notice, and all the benefits that it entails.

Appellants' second contention is that the time between the date of the sheriff's sale (September 14, 1970)

---

* It is difficult to understand why it took appellants four months to discover that publication had been defective, especially in light of the following statement in their brief: "On the morning of [September 20, 1971, counsel for appellants] noted the listing of the case in the Legal Intelligencer of Philadelphia and communicated with the appellant, who advised of complete ignorance of the petition and authorized him to represent the appellants in the proceedings."

and the date of the filing of the petition to fix fair value under the Act (August 13, 1971) was excessive and that therefore the judgment should be marked satisfied.

Section 7 of the Act sets the time limit as follows: "The plaintiff or plaintiffs shall file all petitions in accordance with section one and section two of this act not later than six months after the sale of any real property . . . ." 12 P.S. §2621.7. The word "sale" has been interpreted as meaning the date of the delivery of the deed by the sheriff, not the date when the auctioneer's hammer falls. *Marx Realty and Improvement Co., Inc. v. Boulevard Center, Inc.*, 398 Pa. 1, 156 A. 2d 827 (1959).

Appellants urge that *Marx Realty* should be reversed or, in the alternative, that the present case should be taken outside of its holding due to the difference in the factual situations. Assuming the power to reverse, since the case is now within our jurisdiction, we decline to reverse, for the holding is based upon judicial notice of the probability of delay, which exists today more than ever: "Since the Act requires giving credit on the judgment to the extent of the fair value, no bidder has anything from which to give credit until he gets title, and hence no sale to him can be said to have taken place until a deed is delivered. The Act obviously wants to give the execution plaintiff six months in which to move after sale, but most or even all of this time might pass in removing obstacles to title if vendue were taken as the moment to turn the hour glass. And the Legislature could easily have used restrictive language if it had intended 'sale' to refer to one moment only." *Id.* at 6, 156 A. 2d at 830 (1959).

Nor do we think that the delay in this case was so excessive as to take it out of the scope of the reasoning in *Marx Realty*. The Deed Poll was delivered nine months after the sheriff's auction, and the present suit

began within six weeks of the delivery, for a total of approximately eleven months between the falling of the hammer and the filing of the petition. In *Marx Realty* the deed was delivered after approximately two months and the petition to fix fair value was filed six months after that (on the last possible day), for a total of approximately eight months.

The reason for the greater delay between the passage of title and delivery of the deed in this case is not clear from the record. Appellants' brief hints that the delivery was delayed by appellee's failure to deliver the purchase money to the sheriff. Appellee's brief is more specific: "Plaintiff [appellee] attempted to take delivery of a Sheriff's Deed immediately thereafter, but due to the fact that the Corporate Defendant had outstanding debts owing to the Commonwealth of Pennsylvania in the form of unpaid taxes and otherwise, the Commonwealth of Pennsylvania would not issue a corporate clearance to the Corporate Defendant, and settlement could not be made immediately. Counsel for the plaintiff diligently pursued this matter and subsequently prevailed upon the Commonwealth of Pennsylvania to issue the required corporate clearance and the Sheriff of Philadelphia County then delivered said Deed to the Plaintiff on June 29, 1971."

Although these reasons are not formally of record, appellants' statement is not inconsistent with appellee's. Absent some clearer showing of culpability on the part of appellee or some prejudice to appellants' position, and considering how quickly appellee acted to fix fair value once the deed was delivered, we do not think the time between the sheriff's sale and the filing of the petition was so excessive as to constitute an exception to the rule laid down in *Marx Realty*.

The order is affirmed.