## Security-Peoples Trust Co. v. Swanville Development Co., Inc.

*Peter G. Schaaf,* for plaintiff.
*Walter A. Dart,* for defendants.

CARNEY, *P.J.,* December 1, 1980—This action is before the court on the petition of Swanville Development Company, Inc. and Paul Root, Paul Root, Jr. and David Root (hereinafter the Roots) to set aside sheriff's sales on writs of execution Number 830-1980 and Number 831-1980.[1] Although petitioners alleged several grounds for setting aside the sales, they have briefed only one, the respondent's alleged failure to comply with the Deficiency Judgment Act, 42 Pa.C.S.A. §8103, and disclaim any reliance on inadequacy of the bid as a basis for setting aside the sales. Petitioner's brief, p. 3-4.

From the petition and answer filed, and the testimony taken regarding valuation, the facts are settled. In 1977 each of the petitioners was substantially indebted to Security-Peoples Trust Company. At that time, each of petitioners' separate debts were aggregated into one total debt of $923,000. On June 14, 1977, the Roots executed a promissory note in favor of respondent in the amount of $923,000 and gave a mortgage on certain of their real estate as col-

---

1. The sheriff's sales were held on May 16, 1980 and the instant petition was filed pursuant to Pa. R. Civ. P. 3132 on May 27, 1980. This rule provides: "Upon petition of any party in interest before delivery of the personal property or of sheriff's deed to real property, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances."

lateral for the note. Likewise, on July 26, 1977, Swanville executed a note in favor of respondent in the same amount and gave a mortgage on certain of their real estate as collateral. There is no dispute that despite there being separate notes petitioners owe but one debt.

On April 7, 1980, respondent declared each of the notes in default. On that date judgment was entered against the Roots at No. D. S. B. 9939-J-1980 in the amount of $628,441.96 and in like amount against Swanville at No. D. S. B. 9938-J-1980. Petitioners never attacked either judgment and subsequently writ of execution Number 830-1980 issued against Swanville, and Number 831-1980 issued against the Roots. At the time of default on April 7, 1980, the individual liability of Swanville for principal was $191,200 plus accrued interest, late charges and collection fees. The individual liability of the Roots for principal was $361,966.17, plus accrued interest, late charges and collection fees.

At the sales on May 16, 1980, the Swanville property known as Country Club Estates was sold to the respondent for costs and taxes of $1,736.90 and the Roots' property known as White Swan was sold to respondent for costs and taxes of $10,111.83. The credible testimony regarding valuation establishes that the Swanville property sold at Execution Number 830-1980 has a value of $205,500, while that of the Roots sold at Number 831-1980 has a value of $478,400. As noted above, petitioners concede that this evidence of evaluation is to be considered only as relevant to their argument under the Deficiency Judgment Act, 42 Pa.C.S.A. §8103.

The Act, 42 Pa.C.S.A. §8103 (a); provides:
"SECTION 8103. DEFICIENCY JUDGMENTS

(A) General Rule - Whenever any real property is sold, directly or indirectly, to the judgment creditor

in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the Court having jurisdiction to fix the fair market value of the real property sold. The Petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered."

The purpose of this legislation is to give the judgment debtor whose real estate is sold in execution a credit on the judgment measured by the value of the real estate and not merely the price at which it was sold. Hoffman Lumber Co. v. Mitchell, 170 Pa. Super. 326, 85 A.2d 664 (1952); Grimes v. Grimes, 216 Pa. Super. 150, 264 A.2d 410 (1970). To accomplish this purpose the Act is to be liberally construed. Hoffman, supra.

Other sections of the act require the judgment creditor-purchaser to petition the court to determine the fair market value within six months after the sale. 42 Pa.C.S.A. §8103(d).[2] Failure to file such a petition raises a conclusive presumption that the fair market value of the property equaled the debt, and upon petition of the judgment debtor the court

2. This requirement has been interpreted to mean that the period of time within which the petition must be filed begins to run on delivery of the sheriff's deed vesting legal title in the purchaser. Marx Realty v. Blvd. Center, Inc., 398 Pa. 1, 156 A.2d 827 (1959); Shrawder v. Quiggle, 256 Pa. Super. 303, 389 A.2d 1135 (1978). Although unnecessary to our decision, we do not believe these decisions preclude the filing of a deficiency petition after the fall of the hammer, but before delivery of the deed inasmuch as the purchaser does hold equitable title after the sale is struck down. Conlen v. Girsh, 358 Pa. 109, 56 A.2d 231 (1948).

must discharge the judgment. 42 Pa.C.S.A. §8103(d). If such deficiency petition is filed and the court determines the value of the property to be less than the debt, the court enters a deficiency judgment for the difference and the judgment creditor may proceed to collect the balance through another execution proceeding. 42 Pa.C.S.A. §8103(c). Thus, before a judgment creditor can sell at execution multiple parcels of the judgment debtor's real estate he must proceed under the act to fix the value of the first execution parcel. See, Western Flour Co. v. Alosi, 216 Pa. Super. 341, 264 A.2d 413 (1970); Philip Green & Son, Inc. v. Kimwyd, Inc., 410 Pa. 202, 189 A.2d 231 (1963).

The act further provides that if the judgment debtor's answer and testimony produced established that the fair market value of the property is "more than the value stated in the Petition, the Court shall determine and fix the fair market value of the proeprty, which shall in no event exceed the amount of the debt, interests, costs, taxes and municipal claims." 42 Pa.C.S.A. §(c)(4). This language of the 1978 Act is identical to language in Section 6 of the original Act of July 16, 1941, 12 P. S. 2621.6 (repealed) which has been interpreted to require the court to fix the value at the amount of the debt and not higher. Grimes v. Grimes, supra. Indeed, our Supreme Court has noted, "Where the debtor . . . asserts that an excess resulted from the sale, (they) are bound, just as before the passage of the Deficiency Judgment Act, by the actual sale price." Philip Green & Son, Inc. supra, at 205, 189 A.2d at 233. See also Ochiuto v. Prudential Ins. Co., 356 Pa. 382, 52 A.2d 228 (1947).[3] We conclude that the

---

3. Section 9 of the Act of 1941, 12 P. S. §2621.9 (repealed) provided in part:

"Nothing in this act shall be construed to affect the right of

judgment debtor's only remedy if property grossly in excess of the debt is sold at execution is to seek to set aside the sale on those grounds. See, Capozzi v. Antonoplos, 414 Pa. 565, 201 A.2d 420 (1964).

In the present case if there had been but one judgment-debtor, one note and execution, and a mortgage of both the Country Club Estates parcel and the White Swan Parcel securing the note, the respondent could have issued out a writ of execution on both parcels covered by the single mortgage, exposed them to execution sale, and then purchased them and filed under the Act to determine value. Union Trust Co. of New Castle v. Tutino, 353 Pa. 145, 44 A.2d 556 (1945). If the respondent under this hypothetical had elected to issue out a writ of execution against only one parcel of the mortgaged property, he would have to comply with the Act before executing on the remaining parcel of the mortgaged property. Ibid. However, under Tutino the election belongs to the judgment creditor.

Because the respondent could have executed on all of the mortgaged property if there had been but one note, mortgage and execution, there is no reason for this court to disregard the separate entities petitioners created and the resulting separate ex-

---

any person, liable directly or indirectly, for the payment of the debt, to the benefit of any amount realized on any execution sale, in excess of the fair market value fixed . . ."

But for the decisions in Grimes, supra, Philip Green & Son, supra, and Ochiuto, supra, our construction of this language would be to preserve the debtor's right to a credit or refund of the excess over and above the value of property if it satisfied the debt. See Statutory Construction Act, 1 Pa.C.S.A. §1922(3), 1938. However, this language has been omitted from the 1978 reenactment of the Act and principles of statutory construction compel the conclusion that the debtor is not entitled to a credit. 1 Pa.C.S.A. §1922(4), 1961.

ecution proceedings. Moreover, the evidence establishes that respondent has $640,290 (judgment plus taxes and costs) invested in the subject properties which are evaluated at $683,900. Considering the fluctuating real estate market and the additional expenses respondent will incur in selling these properties, the sale could not be set aside on the grounds that the value of the grounds that the value of the property grossly exceeds the debt.

## AMENDED ORDER

And now, December 5, 1980 for the reasons set forth in the opinion filed, the petition on behalf of Swanville Development Company, Inc. and Paul B. Root, Paul B. Root, Jr., and David B. Root, to set aside the sheriff's sales made pursuant to Writs of Execution at Nos. 830-1980 and 831-1980 is hereby dismissed.

That part of the court's order of May 27, 1980 as did provide that the Sheriff of Erie County is enjoined from delivering his deeds for the real property sold on the captioned writs of execution is annulled and voided, and any such injunction is hereby dissolved.