## First National Consumer Discount Company v. Fetherman

*Howard M. Holmes,* for plaintiff.
*George M. Painter, III,* for defendant.

BORTNER, *J.,* April 21, 1983 — This matter has been brought before the court as a petition to mark judgment satisfied and for liquidated damages. Testimony in the form of admissions and exhibits was presented along with arguments of counsel in a hearing before the undersigned on April 26, 1982. It is upon consideration of this evidence and the record of the sheriff's sale of the property involved that we base our decision to grant the petition and award the requested damages.

A brief summary of the convoluted factual background to this litigation is necessary, if only to explain how petitioners' names came to occupy the lower position in the caption. Originally, this action was brought as a mortgage foreclosure. At a sheriff's sale held on January 14, 1977, respondent First National Consumer Discount Company purchased one of the two parcels encumbered by the foreclosed mortgage. In September, 1978, 20 months after the sheriff's sale, petitioners made a written demand that respondent cause the subject to be marked satisfied. Although respondent at that time indicated a willingness to comply with this request, it was not done. Subsequent inquiries likewise failed to bring about the desired result. Thus, the instant petition was filed.

Upon our review of the relevent testimony, we enter the following:

## FINDINGS OF FACT

1. Petitioners are Clyde R. Fetherman and Veronica L. Fetherman.

2. Respondent is First National Consumer Discount Company.

3. On or about July 22, 1974, petitioners executed and delivered to respondent a mortgage recorded at Page 1169 of Mortgage Book 1948.

4. Two separate parcels of land were encumbered by this mortgage.

5. On October 25, 1975, respondent filed a Complaint in Mortgage Foreclosure against Petitioners.

6. Judgment in Foreclosure was entered in favor of respondent in the sum of $27,600 on December 3, 1976.

7. On January 14, 1977, sheriff's sale was held on one of the two parcels encumbered by the mortgage.

8. Respondent purchased the property at sheriff's sale for the sum of $28,500.

9. Exceptions to sheriff's distribution were filed on behalf of two creditors.

10. The proceeds of the sale were deposited in a passbook account held by the sheriff pending resolution of the exceptions.

11. Exceptions to sheriff's distribution were denied on August 4, 1978 and the sum of $28,404.16, representing $26,912.24 principal and $1,491.92 interest, was disbursed to respondent on or about August 21, 1978.

12. Petitioners sent to respondent's counsel of record a demand for satisfaction of the judgment of record by letter dated September 19, 1978.

13. Respondent's counsel of record sent to petitioners by letter dated September 25, 1978, a copy of an order to mark judgment satisfied and represented that the original was being filed with the court.

14. After discovering that the judgment had not been marked satisfied, petitioners made several further demands upon respondent to have the judgment marked satisfied.

15. Respondent has at no time either filed proceedings for a deficiency judgment or caused the judgment to be marked satisfied.

## DISCUSSION

There remains little of factual dispute in this case; what controversy exists concerns the significance and legal effect of those facts.

The first question that must be answered is whether the Fetherman's property was sold to respondents. According to 42 Pa.C.S. §8103(a), the Deficiency Judgments Act applies "whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings." Although respondent refuses to admit or deny its purchase of the tract, the "Conditions of Sale" sheet prepared by the sheriff on January 14, 1977 and signed by the Secretary of the First National Consumer Discount Company establishes this fact beyond dispute. Further, the sheriff's proposed schedule of distribution filed on February 11, 1977, confirms the sale to respondent. Thus, we are satisfied that the act governs this case.

A second issue is then raised, as to when the statute of limitations incorporated into the act began to run. 42 Pa.C.S. section 5522(b) (2) states that a petition for the establishment of a deficiency judgment following sale of the debtor's collateral under section 8103 must be commenced within six months. Failure to timely petition deprives the creditor of his right to establish a deficiency and consigns him to accepting the proceeds of the sale as complete satisfaction of the judgment.

What is not specified by section 5522 is the event that triggers the running of the statute. Pennsylvania's courts have offered several conflicting analyses of this issue, some holding that the sale occurs

at the falling of the sheriff's hammer, Warfel v. Smith, 55 D.&C. 165 (1945), while others reflect the view that the period runs from the date of delivery of the deed by the sheriff, Merriam v. Cedarbrook Realty Inc., 266 Pa. Super. 269, 404 A.2d 407 (1978).

Respondent argues that the statute in this case should be deemed as running from August 21, 1978, the date when exceptions to the sheriff's proposed distribution were resolved and funds were disbursed. Its contention is that it could not have been aware of any deficiency until that time and should not, therefore, be required to file earlier.

We are compelled to disagree with this argument for the following reasons. In the first place, respondent's recovery was no less obviously deficient at the time the deed was delivered than when the proceeds of the sale were ultimately distributed. The judgment entered in favor of respondent on December 3, 1976 was for the sum of $27,600, plus costs. It is acknowledged in respondent's memorandum of law that the net proceeds of the sheriff's sale, after deducting the costs of execution, taxes, etc. was $26,912.24. Thus, as respondent admits, neither the judgment nor the mortgage was satisfied outright by the sale. It was therefore apparent to respondent by February 11, 1977, the date of filing and posting for the sheriff's proposed schedule of distribution, that the recovery was deficient.

Secondly, section 8103(d) is quite unambiguous in its requirement that the petition to fix the fair market value of the property sold must be presented "within the time after the *sale* of such real property provided by section 5522." (Emphasis added). Although, as noted above, courts have differed as to the commencement of the period, a reading of those cases reveals that the source of their confusion lays

in their varying definitions of the term "sale," some holding the sale to have occurred at the moment the property is knocked down to the successful bidder and others finding it consummated only upon delivery of the deed. At no time has the discovery of the deficiency been held to be the proper trigger for the section 5522 statute of limitations. On the contrary, the sale of the property has been uniformly viewed as the operative occurrence. We are therefore unable to accept respondent's contention that the statute begins to run upon the distribution of funds.

Consequently, it becomes our responsibility to resolve the question of when the sale occurred. The more recent cases decided under the old Deficiency Judgment Act, 12 P.S. §2621.7 (repealed), held that the six-month period for filing the petition to fix the fair market value of the property sold ran from the date of delivery of the deed by the sheriff, and not from the date of the execution sale. Marx Realty & Improvement Co. Inc. v. Boulevard Center, Inc., 398 Pa. 1, 156 A.2d 827 (1959); Delaware Valley Factors Inc. v. G.B. Echenhofer Co. Inc., 226 Pa. Super. 165, 313 A.2d 318 (1973); Merriam v. Cedarbrook Realty Inc., supra.

The Superior Court in Delaware Valley Factors was asked to distinguish the Marx Realty holding based on certain factual dissimilarities. This it refused to do, noting that the Marx Realty decision had been based upon judicial notice of probability of delay that could hinder the consummation of the sale to the successful bidder. Such a probability, which the court observed "exists today more than ever," 313 A.2d at 321, could operate to divest the creditor of his right to file for a deficiency if the period were to run from the falling of the auctioneer's hammer.

Yet the delay that prevented the immediate delivery of the deed in the present case could not have been the sort contemplated in Marx Realty and Delaware Valley Factors. Here, the deed was not delivered until April 5, 1977, nearly four months after the execution sale. The reason for this abeyance lay simply in the device chosen by respondent to avoid expenses associated with the transfer of the property, for its own benefit. Upon the purchase at the sheriff's sale, respondent elected to assign the bid to purchasers who were later identified.

Clearly, the situation presented by the facts of our present case does not give rise to the same concerns as those voiced in Marx Realty. To allow a creditor six months after his own resale of the property in which to determine whether the value of that property was sufficient to satisfy his judgment would be to ignore the obvious purpose of the act: to place a strict limit upon the period of time in which a debtor might find himself both landless and uncertain as to his future liability under that judgment. Thus, we hold that where a bidder has chosen to assign his successful bid to another, the duty to file a petition to fix the fair value of the property under the Deficiency Judgments Act runs from the date of the execution sale itself.

Having therefore concluded that the time period for filing a petition for deficiency judgment began with the sale of the property to respondent on January 14, 1977, we find that respondent's ability to hold petitioner personally liable for that judgment expired on July 14, 1977, when that period ran out. Respondent argues, however, that the recovery was not deficient at the time because petitioners remained liable under the mortgage encumbering the other parcel. However, respondent misconstrues the law of this jurisdiction as reflected in the case of

Union Trust Co. of New Castle v. Tutino, 353 Pa. 145, 44 A.2d 556 (1945) where the Supreme Court held that:

"If a mortgage includes more than one tract of land and the execution is against one tract only, and the plaintiff desires to proceed against other property belonging to the debtor, he must, within six months, apply to the court to fix the fair market value of the property sold and credit the judgment debt with the amount; if he does not do that, the debtor 'shall be released and discharged of such liability.' " 353 Pa. at 149, 44 A.2d at 558.

Thus, respondent would have had to establish the deficiency of his recovery under the sale of the first parcel before proceeding against the second encumbered tract. The only means by which he could have done this is to file a petition to fix the fair market value of the property sold, per section 8103 of the Deficiency Judgment Act. Therefore, his assertion that petitioners remained liable for the judgment by virtue of the mortgage on the second parcel is incorrect. The judgment became satisfied by operation of law at the expiration of the six-month period in which respondent could have filed for deficiency.

The remaining issues address the question of whether respondent has, through his failure to mark the judgment satisfied, become liable to petitioner for liquidated damages. Section 8104(a) of the Deficiency Judgments Act requires that:

"A judgment creditor who has received satisfaction of any judgment in any tribunal of this Commonwealth shall, at the written request of the judgment debtor, or of anyone interested therein, and tender of the fee for entry of satisfaction, enter satisfaction in the office of the clerk of the court where such judgment is outstanding, which satisfaction shall forever discharge the judgment."

In order to enforce compliance with this duty, it is provided in section 8104(b) that:

"A judgment creditor who shall fail or refuse for more than 30 days after written notice in the manner prescribed by general rules to comply with a request pursuant to subsection (a) shall pay to the judgment debtor as liquidated damages 1 percent of the original amount of the judgment for each day of delinquency beyond such 30 days but not less than $250 nor more than 50 percent of the original amount of the judgment. . . ."

We are therefore presented with the following question: Did respondent receive written notice in the manner prescribed by the general rules to comply with a request pursuant to subsection (a) of section 8104?

Respondent argues that we must resolve this question in the negative for the following reasons. First, it contends that the judgment of record outstanding against petitioners was not satisfied. Second, it claims that written requests made upon its counsel of record cannot bind respondent. Third, it maintains that the earliest operative request by petitioners asked for satisfaction of the mortgage and not the judgment. Finally, it is alleged that the requests made were not accompanied by the required tender of the fee for entry and must therefore be denied.

We are unpersuaded by respondent's arguments and here hold that the request to mark judgment satisfied was properly submitted by petitioners' letter of September 19, 1978.

As we have stated above, respondent's judgment of record became satisfied under the provisions of section 8103 on July 14, 1977. On that date, respondent lost any right to proceed against petitioners, either personally or with respect to the mort-

gaged property. Thus the September 19, 1978 request was made more than 14 months after judgment was satisfied.

Respondent's argument that the request was not properly made because it was served upon counsel rather than upon the party to whom it was addressed is simply without merit. The lone case relied upon for this point is Marston v. Tryon, 108 Pa. 270 (1885). In the century that has elapsed since this decision was rendered, the Supreme Court has promulgated Rules of Civil Procedure that govern the service of legal papers. Pa.R.C.P. 233, which is incorporated in section 8104 by language requiring "written notice in the matter prescribed by general rules . . . ," states that:

"(a) All legal papers, . . . including notices . . . shall be served by leaving a copy for or mailing a copy to him at the address of the party or his attorney of record endorsed on an appearance on prior pleading of the party . . . ." Clearly, petitioners' letter of September 19, 1978 satisfies the mandate of this rule.

As to the third argument, that the first operative letter sent by petitioners requested satisfaction of the mortgage, as opposed to the judgment, our decision regarding the running of the statute of limitations confirms the effectiveness of the letter sent September 19, 1978, which referred to the "Fetherman judgment." In any case, we are convinced that respondent was well aware of the subject matter of the correspondence and that no prejudice could have been created by petitioners' verbal imprecision.

Finally, respondent claims that it was not bound by the September 19, 1978, letter since that request was not accompanied by "tender of the fee for entry of satisfaction," which is required by section

8104(a). In assessing the value of this contention, the critical element is the letter dated September 25, 1978, from respondent to petitioner, which included a copy of an order to mark judgment satisfied and represented that the original was being filed with the court. At no point in that letter is the absence of the filing fee either noted or objected to.

Thus, for the above reasons, we enter the following.

## CONCLUSIONS OF LAW

1. The Deficiency Judgments Act governs this action since the property was sold directly to the judgment creditor, respondent.

2. The six-month statute of limitations for the filing of a petition to fix fair market value began to run on January 14, 1977 and expired on July 14, 1977.

3. The judgment against petitioners became satisfied by operation of law on July 14, 1977.

4. The September 25, 1978, letter from respondent to petitioners waived the lack of tender of the requisite filing fee, thus rendering the September 17, 1978, letter from petitioners to respondent a written request for entry of satisfaction in conformance with the act.

5. Respondent failed to comply with the written request for entry of satisfaction at any time.

Accordingly, we enter the following.

## ORDER

And now, this April 21, 1983, it is hereby ordered that judgment be entered in favor of petitioners, Clyde R. Fetherman and Veronica L. Fetherman, and against respondent, First National Consumer Discount Company, in the sum of $13,800, and that

the December 1976 judgment against petitioners be marked satisfied.